Rutledge, Ch, J.
The indictment against the prisoner is very specially drawn, and contains several counts. It charges him in the words of the act of assembly, with having falsely made, forged and counterfeited; with having caused and procured to be falsely made, forged and counterfeited ; and with having willingly assisted in the false making, forging, and counterfeiting a writing obligatory, which is commonly called, and well known by the name of an indent of this state ; the writing is set forth verbatim. It also charges him with having uttered as true, a forged and counterfeit writing obligatory, purporting to be an indent, and set forth verbatim, knowing it to be so,' And it charges him in like manner with forging, with procuring to be forged, and with assisting in 'the forgery of several receipts for money, on the said indent; and with uttering as true, such forged receipts for money on said indent, knowing such receipts to be forged. And all these acts are laid to be done with ip- *151 tent to defraud the several persons mentioned in the indictment, and contrary to the act of assembly, in such case made and provided. The prisoner being found guilty, has offered, in arrest of judgment, the following objections. [Mr. Chief Justice here stated the several objections, precisely as they had been laid down by the counsel for the prisoner, vide ante.'] These several points have been argued with ability and ingenuity, at the bar; we have heard them with great attention, and have since maturely considered them. With regard to the first objection, we consider it as we did at the argument, as of no weight. The indictment, had it stopped at the word “ same,” would have been faulty, and not as the constitution directs. It directs, that all prosecutions shall be carried on in the name, and by the authority of the state of South-Carolina, and conclude against the peace and dignity of the same» In this clause of the constitution, state is the .antecedent to the word same, to which it refers, and there was no need to add the word state. But towards the end of this indictment, act of assembly, not state, is the antecedent. There was a necessity, therefore, to add the word state after the word same; otherwise the conclusion would have been against the peace and dignity (not of the state, but) of the act of assembly. Another objection was, that the acquittance and receipt charged, was not such as come within the act. This act, which was passed the 5th of March, 1736, was made, as the title declares, for putting in force part of the statutes of 2 and 7 Geo. II. and incorporates such parts thereof as relates to this offence. And the third clause, on which the present indictment is founded, is in these words. [Here Mr. Chief Justice read the clause ; which being lengthy, I refer the reader to the public laws, page .] The arguments in support of this objection, were substantially as follow : That to make forgery, felony within this act, it must be done with intention to defraud ; and that these receipts were not intended to defraud. Who, say they, were to be defrauded ? Not the treasurers, because several years interest were released : *152 Not the party to whom the indent was transferred, because he took it with the receipts upon it, and, consequently, had no right to the interest which appeared to have been paid. That the law means a receipt, the forging of which would tend to deprive some person of his right; but this is only á relinquishment by the prisoner, of his claim on the treasury for so much interest; therefore, that the receipt could only injure himself. The forging such a receipt was compared to the case of Rex v. Knight, Salk. 375. Another ground was, that if the counts on the indent itself be not felony, (which they had before contended, on the ground of its not being a writing obligatory, within the act,) those on the receipts cannot be felony; for it cannot be more cx-iminal to-counterfeit the receipts, than the indent; unconnected with which, the receipt is perfectly innocent. The last ground was, that the receipts were neither for money nor goods, which the act requires they should be. But special indents are paid for the interest on general indents; therefore, the receipts must be considered for special indents only, and they are not for money. That money has no ear-mark, which special indents have ; neither are they goods. The receipt, therefore, being neither for money nor goods, comes not within the*act. These arguments rest on three grounds ; 1. That the receipt was not given with intention to defraud. 2. That if it was not felony to counterfeit the indent, it could not be felony to forge the receipt. 3. That the receipt was not given for money ox goods. Although these arguments may at first view appear ingenious and plausible, yet, on examination, they will be found altogether destitute of solidity. The only point on which we agree with the prisoner’s counsel, is, that to make forgery, felony under this act, it must be done with intention to defraud. It surely must. It is the essence of the crime. But they say these receipts were not intended to defraud either the treasurers or Vale. But the jury have found that it wa3 with intent to defraud both. They were the judges of that fact: we cannot say they were mistaken. It is of no consequence whether any *153 person was actually defrauded or not; if the forgery was done with intention to defraud, it is sufficient, and that is found. We will cite some leading cases, which warrant this opinion. From 1 Hawk. P. C. c. 70. s. 2. “ The no-44 tion of forgery doth not seem so much to consist in the u counterfeiting a man’s hand, which may often be done in» u nocently, but in the endeavouring to give an appearance 54 of truth to a mere deceit and falsity ; and to impose that 54 upon the world as the solemn act of another, which he is 44 no way privy tof &c. This was the idea of forgery at common law; it is the same under the statute. Strange, 747. Ward's case. It is not necessary to shew an actual prejudice; a possibility is enough. And a case from Stiles, p. 12. is there referred to, of an indictment at common law, for forgery of a letter of credit to raise money; and no body, says the book, imagined that the indictment did not lie, though it was not said that he actually received money on the letter of credit. 2 Black. Rep. 787. That it is sufficient to aver a general intention to defraud a certain per» son, which intention must be made out by facts at the trial. It is not necessary to set forth particularly the manner in which the fraud is to operate. Solemnly adjudged by all the judges at Lord Mansfield’s chambers.
The case quoted by the prisoner’s counsel, that of erasing the word 44 pounds” in a bond, and inserting marks, is not a forgery, because the sum is thereby lessened, which cannot injure the obligor, but affects only the obligee, will be found, on examination, not to have any avail in a case like this. The law there laid down is good j but the reason on which it is grounded does not apply here. 1 Hawk. c. 70. s. 4. (2 Bac. 567.) 44 It is no forgery in one who raseth the word 44 libris in a bond given to himself, and inserts marcis ; be» “ cause here is no appearance of a fraudulent design to cheat 44 another, the alteration being prejudicial to him who makes 44 it. But it would be forgery, if by the circumstances of 44 the case, it should any way appear to have been done with 44 an eye of gaining an advantage to the party himself, who *154 “ makes it, or of defrauding a third person.” This was the case of .a good bond ; of a bond made to the man himself; it was a case at common law ; yet there it was said it would be forgery, if done with an intention to defraud. Leech, 189. Harrison's case. Prisoner was convicted' on the statute of 2 Geo. II. c. 25. and 31 Geo. II. c. -22. (which extends the former to corporations,) for forging a receipt for money, with intention to defraud the London Assurance Company, He was accountant to the company, who kept their cash at the bank of England, where they had paid 21 Oh which was entered by Clifford, a cashier at the bank, in their bank book thus : “ 1777, June 16th. Bank notes. “ Clifford. 210/.” The prisoner altered this entry by prefixing the figure 3, which made it read 3,210/. The question referred to the twelve judges was, whether this was a receipt within the meaning of the statute ? And they were unanimously of opinion it was, I mention this case to shew, thatalthough it might have been urged, that this could not have been done with intention to defraud the London As* suranco Company, because it appeared to be for their advantage to have credit for 3,000/. more than they had paid j yet no such objection was made, or it was not regarded. They could have no right to credit for more than they had paid ; and the conviction was held tobe legal. From .these cases, and a variety of others that might be adduced, it is clear, that in order to make forgery felony under this act, it is only necessary that it should be done mala fide, with intention to defraud some person. It is not necessary to lay or to prove, that any person was actually defrauded. And this upon good reasons ; because the forgery may be discovered, and the party apprehended for prosecution, before the fraud intended could be thoroughly effected. The intention constitutes the crime.
The counsel for the prisoner contended further, that if the counterfeiting the indent was not felony, counterfeiting the receipts could not be felony ; for it cannot be more criminal to counterfeit the receipt, than the indent; and um *155 connected with the indent, the receipt is perfectly innocent. But this we conceive to be false and inconclusive reasoning; and that the transactions of counterfeiting the indent, and forging the receipt, may be considered and determined upon, as totally independent of each other. The charge with respect to the receipt is for forging a receipt for monei with intention to defraud certain persons. And it is of no consequence on what those receipts were written ; whether on the back of an indent, on the back of a lottery ticket, on a sheet of paper, or on the margin of a newspaper. If the receipt was for money; if it was forged; if it was forged with intention to defraud any person, that is sufficient to constitute it felony under the act. It was further alleged, that these receipts are not for money or goods, but must be considered as given for special indents, "which are neither one nor the other. It is clear that the receipts are not for goods ; but it is laid in the indictment that they were for money; and the fact is so found by the jury. There are two modern cases that shew, that the court have not been very strict on this head, where the intention to defraud has been manifest, always keeping that in view as the foundation of every thing. The one was the case of fames Elliott, in 1777, Leech, 185. He was indicted .for forging a bank note, whereby Thomas Thompson, for the governor and company of the bank of England, promised to pay Joseph Crooke, or bearer, on demand, fifty ; and the indictment charged it to be a promissory note for the payment of money. It was contended for the prisoner, that the word pounds being omitted in the body of the note, it was not a note for payment of money ; or if it was, it was totally uncertain what coin, whether pounds or shillings ; and that on such an uncertainty in a declaration, a plaintiff would be nonsuited. The judge left it with the jury to consider, whether the word fifty imported pounds ; and they found the prisoner guilty on that count which charged him with hcming forged a promissory note for payment of money,with intention “to defraud the bank of England,And on this ob» *156 jection being renewed, by way of motion in arrest of judg-mcnt’ before judges at- Serjeants-Inn, they were unani» mously of opinion the verdict was legal. The other case was that John Taylor, 1779, Leech, 214. He was indicted for that having in his possession," a bill of exchange drawn by Thomas Harper on Joseph Cuff, for 20/.. he forged a receipt and acquittance for the said sum, as follows, viz. u Rec’d. William Wilson,” with intent to defraud the said Joseph Cuff, He was convicted; and the twelve judges were of opinion the conviction was legal. With respect to the special indents, the tax act under which they were issued made them redeemable or exchangeable at the treasury, for gold or silver, at certain periods, &c. that the man who had them, might, probably, if he kept them by him, get the full amount. But if he chose to part with them, he could at any time get money for them, though he could not dispose of them at par. However, it does not ap~ pear, that special indents were paid. They might have been, and they might not have been considered as money. The fact we suppose is, that neither money nor special indents were paid, because the receipt is chai’ged to be forged, and found so. It is said to be for two years’ interest; but it is also said to be for 86/. 2s. 6d. making total two years’ interest. Though the receipt is for those sums, in figures, the operation is the same as if it had been in words at length. We are, therefore, of opinion, that this objection must be overruled. It is immaterial to consider any of the other objections which have been offered; because the first and last objection being overruled, it follows, that the prisoner is lawfully convicted of having forged a receipt for money, with intention to defraud the persons mentioned in the indictment; and that such a forgery is, by the act of assembly, felony without benefit of clergy. We would not, however, be understood, as according to the doctrine laid down by the prisoner’s counsel in their other objections. We have been more diffuse in delivering this opinion than is usual, or perhaps was necessary. But this be* *157 Zng a case of great importance to the public and to the prisoner, and his counsel appearing to lay great stress on this objection, we considered it proper to state thus fully the reasons upon tvhich our decision is founded.
1 heprisoner being asked by the clerk, what he had further to offer why sentence of death should not be pronounced against him according to law; replied, that he had nothing further to offer.
His honor the Chief Justice then (calling him prisoner*) briefly stated to him the crime for which he had been indicted ; the deliberate trial thereupon, in which he had the assistance of able counsel, and that he had been duly convicted by the oaths of twelve of his peers; that he had af-terwards appealed to the court upon several legal exceptions in arrest of judgment; that those exceptions had also been ably argued by his counsel, patiently attended to, and maturely considered .by the court, and for the substantial reasons this day stated by them, had also been overruled. That having now nothing further to offer, it was incumbent on the court to pronounce the sentence of the law against him. Thátthe laws of his country demanded no less than his life as the penalty of his crime. His honour then dilated upon the enormity and ruinous tendency of this crime, in all countries, and especially in a commercial community, and strongly painted the heinousness of the guilt, in a civil, a moral, and a religious view. That as a citizen, he had grossly infringed the public rights; as a man, he had broken through the obligations of honour and integrity j and as a Christian, he had violated the most wholesome precepts of religion. That from a person of his education, and habits, better things were to have been expected. That *158 the court pitied his delusion, and hoped tliat he felt on that solemn occasion as he ought to feel; recommending to him, , , ° 7 in a very pathetic manner, to employ that little interval of .^ieh remained, in making his peace with that God whose law he had offended; and suggesting, as an additional motive, that from the malignity of his offence, the court could not flatter him with any hope of pardon. He then concluded an affecting address, and sentenced him, the prisoner at the bar, to be taken to the place from whence he came, from thence to the place of execution, and there, on Wednesday, the 23d of the present month, between the hours of ten and two, to be hanged by the neck until his body is dead, and prayed that the Lord might have mercy on his soul!
He was executed according to sentence, but not dn the 23d of Marckf as the court had granted him one week’s respite in order to settle his private affairs, which had been complicated, and in á great state of derangement.

 The reader must have observed, that he was indicted under several names. He had long gone Ly the name of Washingtoii,- hut it had often been suspected, and from circumstances latterly transpired, is not now doubted to haye been an assumed name. It is said that, hb real name was Welch,